IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| STATE STREET BANK AND TRUST COMPANY, ) ) ) | |
| Plaintiff, ) ) ) ) | NO. 3:01-1251 JUDGE HAYNES |
| RON V. ECKLAND, ECKLAND AND ASSOCIATES, P.C., PATRICK M. THOMPSON and KELLY KRUSE, ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff State Street Bank and Trust Company ("State Street"), a Massachusetts corporation, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: Ron V. Eckland, a Georgia citizen, Eckland and Associates, P.C., a Georgia corporation, and Patrick M. Thompson and Kelly Kruse, Tennessee citizens. Plaintiff seeks declaratory relief on the priority of its deed of trust on Thompson's property. The Defendant Kruse also holds a deed of trust on Thompson's property. Plaintiff also asserts claims against the Eckland Defendants who allegedly failed to register Plaintiffs deed of trust timely, unlawfully converted funds Plaintiff paid to these Defendants for a title policy on the Thompson property and engaged in fraud in handling Plaintiffs deed of trust on this property.

Before the Court is the Plaintiffs motion for partial summary judgment (Docket Entry No. 69), contending that Plaintiff's deed of trust has priority over the Defendant Kruse's recorded deed of trust. The Defendants Thompson and Kruse responded (Docket Entry Nos. 79, 80 and 83). Defendants assert that material factual disputes exist on the validity of the competing deeds of trust and whether the Defendant Thompson fully paid the underlying indebtedness giving rise to

Defendant Kruse's deed of trust received by assignment from Thompson's creditor.

## A. FINDINGS OF FACT[1]

Plaintiff holds a deed of trust of record in the Davidson County Register of Deeds, Instrument No. 200008100079312, on property owned by Defendant Thompson located at 132 Ensworth Avenue in Nashville, Tennessee. On March 1, 2001, Thompson executed a promissory note and deed of trust to secured this property with the note in the amount of $975,000 to Icon Mortgage, Inc. ("Icon"). The Icon Deed of Trust, however, was not recorded until August 10, 2000. Icon assigned this deed of trust to Plaintiff.

Prior to execution of the Icon Deed of Trust, First Finance, Inc. also held a deed of trust on the Thompson property. First Finance and Thompson entered into an agreement for First Finance to release its deed of trust to allow Thompson to refinance all of the indebtedness secured by his property. The Refinancing Agreement further provided that if the proceeds of the refinancing transaction did not pay off of First Finance's deed of trust, a reduced deed of trust would be executed and recorded.

Thereafter, Thompson entered into the loan transaction with Icon. The proceeds from the Icon loan did not satisfy the entire amount owed to First Finance. Thompson executed a reduced deed of trust with First Finance on March 15, 2004 in the amount of $473,000 secured by his

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed <u>infra</u>, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Based upon the proof before the Court, this section constitutes findings of fact under Fed. R. Civ. P. 56(d) on Plaintiff's priority claim only.

2

property. This reduced deed of trust was recorded on April 27, 2000 in the Davidson County Register of Deeds, Instrument No. 200004270041942. At the time the reduced deed of trust was executed by Thompson, First Finance knew of another deed of trust secured by the Property existed and was ahead in priority of the Reduced Deed of Trust. See Docket Entry No. 70, Exhibit No. 3, Beeny Deposition at pp. 15,17-18. First Finance understood that at the time of its execution of its reduced deed of trust, its deed would be subordinate to that prior deed of trust. Id.

Paragraph 14 of the Reduced Deed of Trust provides that it will become void upon the grantor satisfying all obligations secured by the deed of trust, and that upon such event, legal title to the Property shall revest in the Grantor. Id., Attachment thereto. The Reduced Deed of Trust also provides:

> To secure to Lender: (a) Grantor's Obligations under that certain Continuing and Unconditional Guaranty ("the Guaranty"), whereby Grantor guaranteed the obligations of Access Wellness Systems, LLC, to Lender; (b) payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; (c) performance of the covenants and agreements of Grantor herein contained; and (d) all debts, obligations, liabilities and agreements of Access Wellness Systems, LLC, to Lender, now or hereafter existing, arising directly or indirectly whether absolute or contingent, joint or several, secured or unsecured, due or not due, contractual or tortuous, liquidated or unliquidated, arising by operation of law or otherwise and any modifications, extensions, renewals or rearrangements of any of the above. The terms of the Guaranty are incorporated by reference as fully as if copied herein verbatim.
>
> This conveyance is made in trust to also secure the payment of any extensions, modifications or renewals thereof, and notes given in payment of interest, and all attorney's fees, court costs and expenses of whatever kind, incurred in the collection of said indebtedness and the enforcement and protection of the lien of this conveyance. This Deed of Trust shall remain in full force and effect until all obligations secured hereby are fully satisfied. All indebtedness secured under this Deed of Trust is sometimes herein collectively referred to as the "secured obligations."

Id. at p. 2. The reduced deed of trust secured a personal guaranty from Thompson. Id. at pp. 25-26.

According to First Finance, on June 20, 2002, Thompson fully satisfied the Reduced Deed of Trust. Id., Deposition pp. 23-24 and 35), but First Finance inadvertently failed to release its reduced deed of trust. Id. at p. 25. Yet, five months later, Thompson requested First Finance to assign its deed of trust to Sunshine Holdings, LLC. Id. at pp. 22-23. On December 5, 2000, First Finance executed an assignment of its reduced deed of trust to Sunshine Holdings. Id. at Attachment thereto. First Finance did not received any consideration for this assignment nor has this assignment been recorded. Id. at 26.

Thompson defaulted on his Icon note and as Icon's successor, State Street notified Thompson of his default and its intention to initiate foreclosure proceedings, if the note were not paid in full. State Street then learned that Kruse asserted his ownership of an earlier recorded deed of trust on the Thompson property in the amount of $473,000, based on First Finance's assignment of the Thompson deed of trust.

Kruse asserts that he obtained an assignment of the reduced Deed of Trust from Sunshine Holdings: "It was an assignment from Sunshine Holdings to myself and a copy — I got that original and a copy of the assignment from First Finance to Sunshine Holdings." (Kruse Deposition at pp. 72:3-72:9). Yet, Kruse has not produced that document. State Street cites Kruse's lack of documentation that he holds a deed of trust on the Thompson property. Id. at 8. Thompson remains in default of the Icon note. Id. at 9.

In any event, it is undisputed that the First Finance's deed of trust secures only certain indebtedness to First Finance. Mr. Kruse admits that he does not have an assignment of the First Finance obligation secured by the First Finance's reduced deed of trust.

4

## B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex Corp. v. Catrett, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56© standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must

6

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.' " (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> \* \* \*
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

8

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine

9

whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Where a federal court exercises diversity jurisdiction, the Court must apply the substantive law of the state in which the claim is filed. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Thus, Tennessee substantive law controls.

The pertinent Tennessee statute here on the priority of registered deeds provides as follows:

> Any of said instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterward; unless it is proved in a court of equity, according to the rules of said court, that the party claiming under the subsequent instrument has full notice of the previous instrument.

Tenn. Code Ann. § 66-26-105.

Tennessee courts hold that "the first instrument recorded holds a priority status over a subsequently recorded instrument. Yet, the statute limits a race to the courthouse by providing that a party claiming priority status under a subsequent mortgage who has notice of the prior mortgage, will not gain priority status." In Re Total Care, Inc., 102 B.R. 646, 650 (Bankr. W.D. Tenn. 1989).

The undisputed fact is that First Finance knew when it received its reduced deed of trust that First Finance's deed of trust would not have priority over the earlier deed of trust issued to Icon.

10

(Docket Entry No. 70, Collective Exhibit 3, Beeny Deposition at p. 15. When First Finance entered into its Refinancing Agreement with Thompson, First Finance understood and expressly provided in the refinancing agreement, that First Finance would release its deed of trust to allow the refinancing to take place. Id. If Thompson were unable to secure refinancing for the entire amount owed to First Finance, then First Finance would execute a new deed of trust with Thompson. Id. In a word, under these conditions, the next sequential deed of trust in this arrangement would be Icon's. It is undisputed that First Finance clearly knew and understood that the earlier of the two deeds of trust would have priority over First Finance reduced deed of trust.

Accordingly, given First Finance's prior notice of a preceding deed of trust on the Thompson property, the Court concludes that the Icon/State Street deed of trust has first priority among the deeds at issue and that Plaintiff should be permitted to foreclose on the Thompson property.

As to First Finance's assignment of its interest in the Reduced Deed of Trust to Sunshine Holdings and ultimately to Kruse, an assignment transfers property, right or interest from one person to another. 6 Am. Jur. 2d Assignments § 1 (1963). In other words, an assignment is a contract governed by applicable legal principles for contracts. Hustsell v. Citizens Nat'l Bank, 64 S.W.2d 188, 190 (Tenn. 1933) (citing 5 Corpus Juris, p. 840). Under Tennessee law, as a general rule, consideration is an essential element of every contract. Price v. Mercury Supply Co., 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984).

As applied here, at the time of this assignment, First Finance had been fully paid on the Thompson debt, covered by the reduced deed of trust. The undisputed fact is that First Finance was not given any consideration for its assignment of the deed of trust to Sunshine. (Docket Entry No. 70, Collective Exhibit 3, Benny Deposition at pp. 23-24). As a matter of fact and law, that

11

assignment is invalid and unenforceable.

In sum, the Court concludes that Icon/State Street Deed of Trust has first priority among the deeds of trust for the Thompson property. As a result, Plaintiffs motion for partial summary judgment on this priority claim should be granted as a matter of law.

An appropriate Order is filed herewith.

**ENTERED** this the 13th day of July, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge